IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JULIE M. SISLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) CASE NO.: 01-CV-0602A (Scott) |
| v. | ) |
| | ) |
| WAL-MART STORES, INC., | ) |
| And | ) |
| WEXLER AND WEXLER | ) |
| | ) |
| Defendants | |

**DEFENDANTS WAL-MART'S AND WEXLER AND WEXLER'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

Pursuant to Rule 56 of the Local Rules of Civil Procedure for the Western District, Defendants Wal-Mart Stores Inc., ("Wal-Mart") and Wexler and Wexler, though their attorneys, Schroder Joseph and Associates, LLP submit this Statement of Undisputed Material Facts in support of their Motion for Summary Judgment along with the accompanying Defendants' Appendix to Its Statement of Undisputed Facts ("Defendant's Appendix").

1. Julie Sisler was employed by Wal-Mart from December 7th, 1992 until August 31st, 1998 when she was terminated. Complaint ¶¶ 3, 19, 6. Appendix Exhibit A.

2. On August 22, 2001, the Plaintiff filed the Complaint in this Action.

3. On November 4, 1992 Plaintiff completed an application for employment with Wal-Mart. A copy of Plaintiff's Employment Application is attached as Exhibit B to Defendants' Appendix.

4. Plaintiff acknowledged in her employment application that " I understand that ….
if I am hired I will be able to resign at any time for any reason. Likewise, the company
can terminate my employment at any time with our without cause. I further understand
that no one other than the President of Wal-Mart Stores Inc. or Vice President of its
People's Division has the authority to enter into an employment contact or agreement
with me, and that my at-will employment can be changed only by a written agreement
signed by the President of Wal-Mart Stores Inc."

5. Julie Sisler, received a copy of the Wal-Mart Associate Handbook on November 12, 1992 as part of her "new hire package". September 10, 2002 Deposition of Julie Sisler p. 72 lines 5-10. (hereinafter Sisler Deposition). Relevant Excerpts from the Sisler Deposition are attached as Exhibit C to Defendants' Appendix.

6. On November 12, 1992, Julie Sisler signed the last page of the Associate Handbook entitled "acknowledgment." A copy of the signed acknowledgment is attached as Exhibit D to Defendants' Appendix.

7. The acknowledgment page stated in relevant part, "… the stated policies [referring to the policies in the Wal-Mart Associate Handbook] and benefits are not intended to create nor be interpreted in any way as a contract between Wal-Mart and you [indicating the undersigned, Julie Sisler] unless otherwise advised in a written agreement signed by you and the President of the company or the Vice President of Wal-Mart's People Division. Your employment with Wal-Mart is on an "at-will" basis. This means that you are free to terminate your employment at any time and that Wal-Mart equally reserves the right to terminate the employment relationship with or without good cause and without prior notice." *See* Appendix Exhibit D.

8. Plaintiff testified that that she never had any negotiations with the President of Wal-Mart Stores or the Vice President of Wal-Mart's People Division and that she never entered into an employment agreement signed by the President of Wal-Mart or the Vice President of Wal-Mart's People Division. Sisler Deposition at page 71, lines 16-19 and page 74 lines 2-13.

9. Plaintiff testified that she understood that Wal-Mart could terminate her employment with or without just cause. Sisler Deposition at page 78, lines 1-4.

10. Plaintiff also testified that upon being hired she understood that her employment relationship could be terminated with or without cause. Sisler Deposition at page 78 lines 5-13.

11. On August 31, 1998 Plaintiff executed a promissory note titled "Restitution Note" agreeing to pay Wal-Mart the sum of $142.20. A copy of this note is attached as Exhibit E to Defendants' Appendix.

12. On August 31, 1998 Plaintiff executed a statement, acknowledging that she took extra breaks and that if terminated she would be responsible for repayment of the sum of $142.20 for her excess breaks. A copy of this statement is attached as Exhibit F to Defendants' Appendix. (hereinafter August 31, 1998 Statement).

13. Defendants, without admitting the allegations in the Complaint, state for the purposes of this motion that the Court may presume to be true so much of the allegations in the Complaint that allege that on August 31, 1999 Plaintiff met with several Wal-Mart employees for a period of 2 ½ hours in an office located at the store where she was employed. Complaint ¶ 27.

14. Plaintiff testified that the door was locked but could be unlocked from inside of the room. Sisler Deposition at page 114, lines 11-18.

15. Plaintiff testified that she could not recall whether she ever asked to leave the room. Sisler Deposition at page 116 lines 6 to line 10.

16. Plaintiff testified that she never attempted to get out of her seat or walk out of the room. Sisler Deposition at page 116, lines 11 to 13.

17. Plaintiff testified that at the time she signed the August 31, 1998 Statement she believed that the statement was false. Sisler Deposition at page 131 lines 21 to 23.

18. Plaintiff testified that at the time she signed the note she did not believe she owed Wal-Mart the amount due under the note. Sisler Deposition pages 162 line 21 to page 163 line 4.

19. Plaintiff testified that "after two and half hours I signed and did whatever it took to get out of that room." [Referring to the August 31, 1998 Statement and Restitution Note] Sisler Deposition at page 130 line 15 to line 21; see also Plaintiff's Complaint at ¶ 38 (Plaintiff "complied merely for the purpose of attempting to satisfy Defendant and thus gain release from the room.")

20. Defendants state that what was said to the Plaintiff during the meeting on August 31, 1999 is in dispute. Therefore, without admitting the allegations in the Complaint, Defendants state that for the purposes of this motion the Court may assume to be true the allegations in the Complaint that Wal-Mart employees made the following statements to Plaintiff prior to her execution of the August 1998 Statement and Restitution Note:

(a) that " [Defendant Wal-Mart] had captured [Plaintiff] on videotape numerous times over the course of months taking an excess number of 15 minute breaks." Complaint 31;

(b) that Plaintiff "by supposedly exceeding her allotted fifteen (15) minute breaks had committed the crime of theft of time" Complaint ¶ 32;.

(c) that Plaintiff "had intentionally damaged merchandise and then marked down such merchandise for the purpose of later purchasing said merchandise at a savings…" Complaint ¶ 33;

(d) that Plaintiff had "…been observed by company security personal to intentionally damage merchandise." Complaint ¶ 34; and,

(e) that if Plaintiff "confessed" she would not terminated. Complaint ¶ 30.

21. Plaintiff testified that Wal-Mart required employees to punch in and out for breaks. Sisler Deposition page 139 lines 13 to 18.

22. Plaintiff testified that she did not always punch out for her breaks. Sisler Deposition page 124 lines 19 to 20.

23. Plaintiff testified that she would divide up her allotted 15 minute breaks into portions so that she could smoke. Sisler Deposition page 137 lines 18 to 20; page 142 lines 4 to line 11.

24. Plaintiff testified that when she did punch out for breaks she had to walk from the back of the store to the front of the store to go outside in order to smoke. Sisler Deposition page 139 line 13 to page 140 line 11.

25. On occasion, after she had punched out, she would be stopped by a customer seeking assistance on her way outside to smoke and that employees were expected to assist the customer. Sisler Deposition page 139 line 13 to page 140 line 11.

26. When this happened Wal-Mart's policy was that "you would have to find a member of management, and then have them re, reclock you – that person reclock your or whatever, or that they'd sign it and then say you can go outside and finish, take your fifteen-minute break and don't worry about punching out." Sisler Deposition page 140 line 14 to page 141 line 2.

27. Plaintiff testified regarding the alleged statements with respect to whether she would be able to keep her job "I said well, if I write this could I possibly save my job, and he said [a Wal-Mart employee] **it's possible."** Sisler Deposition page 120 line 15 to line 18 (emphasis added).

28. Plaintiff testified that Wal-Mart has never commenced a lawsuit against her. Sisler Deposition at page 124 lines 10-24.

29. Plaintiff testified that Wal-Mart has never caused the police to arrest her. Sisler Deposition at page 124, line 8-9.

30. Plaintiff Sisler testified that she never made any payments on the Restitution Note. Sisler Deposition at page 164 line 15 to line 18.

31. Three (3) letters from Wal-Mart were addressed to Plaintiff attempting to collect the debt described on the note titled "Restitution Note." Copies of these letters are attached as Exhibit G to Defendants' Appendix.

32. The latest letter written by Wal-Mart regarding the note titled "Restitution Note" was dated February 28, 1999. Defendants' Appendix Exhibit G.

33. Plaintiff testified that she received one note and one phone message seeking to collect the debt described in the Restitution Note. Sisler Deposition page 168 lines 8 to 19.

34. Plaintiff produced three letters on letterhead with the name Wexler and Wexler and addressed to Plaintiff c/o Malone Attorney at Law. Copies of the letter produced by Plaintiff are attached as Exhibit H to Defendant's Appendix.

35. The first letter from Wexler and Wexler dated April 28, 1999 stated in relevant part that "Unless you notify our office within 30 days after receipt of this letter that the validity of this claim, or any portion of it, is disputed, we will assume that the claim is valid." Defendants' Appendix Exhibit H.

36. The last letter from Wexler and Wexler was dated July 15, 1999.

37. The phone call was received on or about July 20, 1999. Deposition of Mary Maloney page 35 line 19 to page 36 line 1. Excerpts from the Deposition of Mary Maloney ("Maloney Deposition") are attached as Exhibit I to the Defendants' Appendix.

38. This was the only conversation Ms. Maloney had with Wexler and Wexler. Maloney Deposition at page 36 lines 3 to 5.

39. Ms. Maloney testified that she produced all non-privileged documents. Maloney Deposition page 5 lines 12-13.

40. Plaintiff did not produce in discovery any correspondence between Ms. Maloney to Wexler and Wexler, other than the three letters attached as Exhibit H to Defendants' Appendix.

41. Plaintiff produced a copy of what is allegedly a credit report dated April 10, 2001, which was marked as Exhibit 20 to the Deposition of Plaintiff. A copy of this Exhibit 20 to Plaintiff's deposition is attached as Exhibit J to Defendants' Appendix.

42. Without conceding the admissibility of the alleged credit report, Defendant states that the report contains an entry which states that "Wexler & Wex as a collection agency/attorney" and an unpaid balance of $142 on individual account "Wal-Mart Stores Inc. Rest." Defendants' Appendix Exhibit J.

43. Without conceding the admissibility of the alleged credit report, Defendants state that the credit report indicates that Plaintiff "opened" on 5/2000 a revolving Account Credit Card with FST USA Bank with a Credit Limit of $11,000 and that the "most owed" on this account was $10,816. Defendants' Appendix Exhibit J page 1 of 9.

44. Without conceding the admissibility of the alleged credit report, Defendants state that the credit report indicates that Plaintiff "opened" on 4/2000 an installment account recreational merchandise with M&T Bank. The "most owed" on this account was $18,705. Defendants' Appendix Exhibit J page 2 of 9.

45. Without conceding the admissibility of the alleged credit report, Defendants state that on page 9 of 9 of the document is the following statement: "If you believe any of the information in your credit reports is incorrect please let us know. For your convenience, an investigation form is included." *See*, Defendants' Appendix Exhibit J.

46. Plaintiff testified that she never reported any errors on her credit report. Sisler Deposition page 188 line 16 to page 189 line 19.

47. When asked "was the credit report inaccurate in any respect?" Plaintiff answered "No." Sisler Deposition page 187 lines 19 to 21.

48. Plaintiff testified that on one occasion she received a letter that she no longer has, denying her credit. Sisler Deposition page 181 line 16 to 23; page 182 lines 2 to line 19.

49. Plaintiff testified that to her recollection the letter stated that she was being denied credit because "my monthly income doesn't exceed the credit limit or something that extent…." Sisler Deposition page 181 page line 20 to page 182 line 1.

50. Plaintiff also testified that on another occasion she requested an increase in her credit limit by telephone and that her request was denied. She testified that she was told "looking over your credit report we are unable at this time to increase your available credit." Sisler Deposition page 183 line 2 to 183 line 18.

Dated: Buffalo, New York
March 15, 2004

    Respectfully submitted,

    **SCHRÖDER, JOSEPH & ASSOCIATES, LLP**

    **By:**

    <u>/s/Linda H. Joseph</u>
    **Ginger D. Schröder**
    **Linda H. Joseph**
    **SCHRODER, JOSEPH & ASSOCIATES**
    **766 Ellicott Street**
    **Buffalo, NY  14203**
    **(716) 881-4901 Telephone**
    **(716) 881-4909 Telefax**

    **Attorney for Defendants**