UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JULIE M. SISLER,

       Plaintiff,

                    **Hon. Hugh B. Scott**

       v.

                      01CV602

                      **Decision**
WAL-MART STORES, INC.,             **&**
WEXLER AND WEXLER,             **Order**

       Defendants.

   Before the Court is plaintiff's motion (Docket No. 45) for reconsideration of the Order of February 6, 2004, disqualifying plaintiff's counsel (Docket No. 44). This action was referred to the undersigned for all pretrial matters (Docket No. 5).

## BACKGROUND

   Plaintiff commenced this diversity breach of contract action on August 27, 2001 (Docket No. 1), in which she alleges that she was improperly terminated by defendant Wal-Mart Stores ("Wal-Mart"), and then subject to improper debt collection practices by defendant law firm Wexler and Wexler ("Wexler") when the firm attempted to collect a debt on behalf of Wal-Mart (see Docket No. 42, Decision and Order, at 1). Among other claims, plaintiff alleges in her complaint that defendant Wexler "continued to commit fraud upon the Plaintiff by demanding monies from her and threatening her, after speaking with **MARY E. MALONEY**, attorney for the Plaintiff, and knowing that the Plaintiff was pregnant and in a fragile emotional state." (Docket No. 1, Compl. ¶ 73, emphasis in original.) Ms. Maloney later testified that she had one

...

telephone call to Wexler and that the firm's telephone calls to plaintiff were upsetting to her and that she was pregnant. (Docket No. 45, Pl.'s Atty. Affirm. ¶ 15; Docket No. 56, Maloney Exam. Tr., Jan. 26, [2004], at 43; Docket No. 48, Defs.' Atty. Affirm. Ex. B.)

Defendants answered on November 7, 2001 (Docket No. 4). Defendants then moved to compel plaintiff's attorney to testify at a deposition, namely about Ms. Maloney's conversations with defendant Wexler, regarding her client's physical and emotional condition. (Docket Nos. 21, 22, Defs.' Affirm. ¶ 6.) Defendants argued that they needed Ms. Maloney's deposition because she was the person who informed Wexler that plaintiff was pregnant. (Docket No. 31, Order, Aug. 13, 2003, at 3.) Defendants contended that, "until Ms. Maloney's deposition is taken, it cannot be ascertained whether her testimony is going to be adverse to her client thereby necessitating that she be disqualified." (Docket No. 22, Defs.' Affirm. ¶ 7.) Plaintiff's damages sought recovery for mental and emotional suffering. It appeared that Ms. Maloney's testimony regarding her conversations with Wexler were material and relevant to the extent that Wexler were aware of plaintiff's pregnancy and her "fragile state." This Court found that defendants were entitled to discovery on this issue and authorized defendants to depose Ms. Maloney on this limited issue. (Docket No. 31, Order at 3-4.) The Court rejected plaintiff's proposal to amend the Complaint to eliminate the potential disqualifying provisions. (Id. at 4.)

During a subsequent status conference on October 28, 2003, defense counsel reiterated their intention to depose Ms. Maloney. (Docket No. 37, Oct. 28, 2003.) The minutes from that conference indicate that "new counsel [is] to appear for plaintiff at deposition." (Docket No. 37.) At the January 6, 2004, conference, Ms. Maloney still represented plaintiff. The minutes from

that conference indicate that substitution of plaintiff's counsel was to occur before Ms. Maloney's deposition later that month.

Although the issue of Ms. Maloney's role as advocate-witness continued to be raised in subsequent conferences, plaintiff's counsel did not withdraw from the case. Instead, a notice of limited appearance was filed by Morton Abramowitz as attorney of record for plaintiff only for the January 26, 2004, deposition of Mary Maloney. (Docket No. 43, Jan. 26, 2004).

Defense counsel wrote that they expected plaintiff to retain new counsel to represent her and that defendants would not make any further applications to the Court to enforce the Court's prior directions to have new counsel in place prior to the scheduled deposition of Ms. Maloney. (Letter Linda Joseph, Esq., to Mary Maloney, copy to Court, dated Jan. 7, 2004, page 1.) Defendants there contended that plaintiff was to retain new counsel to proceed with the entire case, and not merely to appear at the deposition or to proceed against one defendant (id.).

Ms. Maloney was deposed on January 26, 2004 (Docket No. 56; see Docket No. 48, Def. Atty. Affirm. Ex. B (excerpts)). This Court on February 6, 2004, sua sponte, found that Ms. Maloney was an advocate-witness in this action, disqualifying her as counsel and ordering plaintiff to identify new counsel within thirty days of entry of the Order (Docket No. 44). Plaintiff then filed the instant motion for reconsideration (Docket No. 45).

Meanwhile, defendants have moved for summary judgment (Docket No. 51) and this Court held that motion in abeyance pending decision of plaintiff's motion for reconsideration (Docket No. 55).

**DISCUSSION**

As a threshold matter, defendant argues that plaintiff's motion for reconsideration is in effect an untimely motion to reconsider this Court's August 13, 2003, Order (Docket No. 31) to compel Ms. Maloney's testimony and the finding there that she was a fact witness. Alternatively, defendant argues that plaintiff has not presented new evidence or any change in the law to justify reconsideration. (Docket No. 47, Defs.' Memo. of Law at 6-10.) The February 6, 2004, Order plaintiff seeks to have reconsidered, however, can be distinguished from the earlier decision to compel counsel's testimony, since plaintiff could have selected substitute counsel prior to the examination of her present attorney to represent her for the balance of this action, compelling the present motion practice. But given the competing factors in the question of disqualification of counsel (such as the disciplinary rules, the party's valued right to choose her own counsel, the fairness and effect of granting disqualification in a given situation, and the delay such a disqualification will pose in the litigation and the potential strategic advantage such a motion may give one party over its opponent, see S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp., 69 N.Y.2d 437, 440, 443, 515 N.Y.S.2d 735, 736, 738 (1987)), plaintiff's motion nevertheless will be considered.

"The test for disqualifying counsel is whether counsel 'ought to be called' as a witness." Keoseian v. von Kaulbach, 707 F. Supp. 150, 154 (S.D.N.Y. 1989) (citing ABA Code of Professional Responsibility, DR 5-102). New York State Code of Professional Responsibility Disciplinary Rule 5-102(A) ("DR 5-102") provides that

> "A lawyer shall not act, or accept employment that contemplates the lawyer's acting, as an advocate on issues of fact before any tribunal if the lawyer knows or it is obvious that the lawyer ought to be called as a witness on a significant issue

4

>on behalf of the client, except that the lawyer may act as an advocate and also testify:
>(1) If the testimony will relate solely to an uncontested issue.
>(2) If the testimony will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony.
>(3) If the testimony will relate solely to the nature and value of legal services rendered in the case by the lawyer or the lawyer's firm to the client.
>(4) As to any matter, if disqualification as an advocate would work a substantial hardship on the client because of the distinctive value of the lawyer as counsel in the particular case."

N.Y.S. Code of Professional Responsibility DR 5-102(A), 22 N.Y.C.R.R. § 1200.21(a)[1]. The reasons for this ban against attorney also testifying as a witness is to protect the legal profession as a whole from an unseemly public image and to avoid confusion of lay persons when a matter is tried to a jury. Keoseian, supra, 707 F. Supp. at 154.

This Court noted that Ms. Maloney's dual role as attorney and witness was similar to the situation in MacArthur v. Bank of New York, 524 F. Supp. 1205 (S.D.N.Y. 1981), where the court ordered defense counsel to withdraw under DR 5-102(A) when it became apparent that the attorney was also a material fact witness. "The disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the district court." Purgess v. Sharrock, 33 F.3d 134, 144 (2d Cir. 1994) (citations omitted). "'Disqualification may

---

[1] See also id. DR 5-102(C), (D), 22 N.Y.C.R.R. § 1200.21(c), (d) ("(c) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client, the lawyer shall not serve as an advocate on issues of fact before the tribunal, except that the lawyer may continue as an advocate on issues of fact and may testify in the circumstances enumerated in paragraphs (a)(1) through (4) of this section. (d) If, after undertaking employment in contemplated or pending litigation, a lawyer learns or it is obvious that the lawyer or a lawyer in his or her firm may be called as a witness on a significant issue other than on behalf of the client, the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer and the firm must withdraw from acting as an advocate before the tribunal.")

be required only when it is likely that the testimony to be given by [counsel] is necessary.'" Id. (quoting S & S Hotel Ventures, supra, 69 N.Y.2d at 445-46, 515 N.Y.S.2d 739, citing in turn Foley & Co. v. Vanderbilt, 523 F.2d 1357, 1359 (2d Cir. 1975)). "Testimony may be relevant and even highly useful but still not strictly necessary. A finding of necessity takes into account such factors as the significance of the matters, weight of testimony, and availability of other evidence." S & S Hotel Ventures, supra, 69 N.Y.2d at 446, 515 N.Y.S.2d at 739.

 Here, plaintiff's counsel has been deposed as a witness. Plaintiff argues that Ms. Maloney is not a necessary witness to require her disqualification as counsel, that her testimony was not necessary or on a significant point. Plaintiff contends that Ms. Maloney's testimony was cumulative of other evidence and need not be produced at trial. She only testified as to her knowledge of her client's condition (her pregnancy and fragile state) relayed to one defendant (Wexler), information that defendants had from other sources. Plaintiff would impute Wexler's knowledge from disclosures to defendant Wal-Mart, Wexler's client and principal (which Wal-Mart, in turn, obtained from its agents). (Docket No. 45, Pl.'s Atty. Affirm. ¶ 15.) Plaintiff indicates that she does not intend to call Ms. Maloney, and that the telephone call she alleged in the Complaint is insignificant given the other instances of Wexler's purported fraudulent conduct alleged by plaintiff herself to justify her fraud claim (Docket No. 45, Pl.'s Atty. Affirm. ¶ 34).

 Alternatively, plaintiff argues the hardship to her if Ms. Maloney were removed as her attorney. The stand by counsel who represented plaintiff during Ms. Maloney's examination is not willing to assume the case. Ms. Maloney now states that she has a longstanding relationship

with plaintiff, since plaintiff is a daughter of a long time secretary in Ms. Maloney's firm, thus justifying continuing this representation.

Defendants counter that Ms. Maloney's testimony is central to plaintiff's claim for punitive damages for plaintiff's fraud claim in her second cause of action (see Docket No. 1, Compl. ¶ 75). Ms. Maloney is the only available witness to her conversation with Wexler. Since she failed to object to the Order compelling her testimony as a necessary witness, defendants conclude that she can not now complain.

Applying the factors the New York State Court of Appeals discussed in S &S Hotel Ventures, supra, 69 N.Y.2d at 446, 515 N.Y.S.2d at 739, as to the significance of the matters Ms. Maloney testified to, the Complaint in this action contains the allegation that Ms. Maloney herself was the source of information to Wexler regarding plaintiff's state. (Docket No. 1, Compl. ¶ 73.) Absent that telephone call (or other evidence of the firm's knowledge) Wexler, a collections law firm, would not know the state of plaintiff as a debtor. Plaintiff has not moved for leave to amend the Complaint (although plaintiff indicated her intention to amend once the issue of Ms. Maloney's testimony arose, see Docket No. 31, Order of Aug. 13, 2003, at 4). By making this allegation and specifying plaintiff's fraud claim, Ms. Maloney made herself into a fact witness, which this Court recognized in granting defendants' motion to compel her testimony (Docket No. 31). Plaintiff has not done anything to diminish this (such as amend the Complaint or drop claims based upon Wexler's knowledge of plaintiff's fragile state). As defendants argue, plaintiff's fraud claim against Wexler is for aiding and abetting a fraud, which requires proof of Wexler's **actual knowledge** of the fraud. (Docket No. 47, Defs.' Memo. of Law at 6 n. 4 (emphasis in original), citing Renner v. Chase Manhattan Bank, No. 03-7319, 85

Fed. Appx. 782, 2004 U.S. App. LEXIS 144 (2d Cir. Jan. 7, 2004)). See Armstrong v. McAlpin, 699 F.2d 79, 91 (2d Cir. 1983) (to plead aiding and abetting under New York law, must plead actual knowledge of aider); Wight v. BankAmerica Corp., 219 F.3d 79, 91 (2d Cir. 2000). Thus, Wexler's knowledge of plaintiff's emotional state, and the sources of that knowledge, are significant for plaintiff's unamended fraud claim.

As to the weight of the testimony, plaintiff contends that she will not call Ms. Maloney as a witness and that other sources (including her own testimony) support the fraud claim against Wexler (Docket No. 45, Pl.'s Atty. Affirm. ¶ 29). Defendants argue, however, that Ms. Maloney's testimony is inconsistent with her client's as to whether pregnancy renders a woman (or plaintiff herself) in a fragile emotional state to place Wexler on notice when the firm dunned plaintiff (Docket No. 47, Defs.' Memo. of Law at 13 & n.7; cf. Docket No. 45, Pl.'s Atty. Affirm. ¶ 30). Plaintiff testified that she believed that pregnancy does not place a woman in a "fragile emotional state" (Docket No. 47, Defs.' Memo. of Law at 13; Docket No. 48, Defs.' Atty. Affirm. Ex. E, Pl. Tr. at 172), while Ms. Maloney testified to her contrary belief (see Docket No. 56, at 43-46). While normally, the attorney's belief is not material, by alleging that she contacted defendant to have them cease contacting plaintiff on her belief that due to her pregnancy that she was in a fragile state that could not withstand dunning, Ms. Maloney placed herself squarely into this case.

Finally, as for the availability of other evidence for this point, plaintiff only points to the client's knowledge and imputing it to the agent law firm without additional evidence of actual transmission of the client's knowledge to the firm. For example, there is no evidence of Wexler & Wexler being present at plaintiff's unemployment hearing, attended by a Wal-Mart agent, in

which plaintiff claims she showed her pregnancy and fragile state (ultimately) to defendants (see Docket No. 45, Pl.'s Atty. Affirm ¶¶ 15, 16, 17). The Wexler employee who spoke with Ms. Maloney is not available as a witness. Plaintiff herself testified that, to her knowledge, no one at Wexler knew of her pregnancy (Docket No. 48, Defs.' Atty. Affirm. Ex. E, Sisler Exam. Tr. at 173), with Ms. Maloney stating during plaintiff's examination that she spoke to Wexler and told them that plaintiff was pregnant when the firm made its contacts with her (id., Sisler Exam Tr. at 173-74). The imputation of this knowledge to Wexler comes from Ms. Maloney's belief that, as Wal-Mart's agent, Wexler was somehow given this information. (Maloney Tr. at 43; Docket No. 48, Ex. B.) Plaintiff essentially argues for double imputation of knowledge (from Wal-Mart's agent at the unemployment hearing then from Wal-Mart itself) to reach Wexler. While plaintiff may have shown Wal-Mart's knowledge of her condition, it is a stretch to conclude that Wal-Mart's attorneys would know this as well (especially if this firm collects debts and apparently is not involved in Wal-Mart's labor relations). In collecting the debt at issue here, Wexler is Wal-Mart's agent; thus, plaintiff's arguments imputing the agent's knowledge to the principal is turned on its head. The better source of evidence as to Wexler's knowledge of the condition of plaintiff would be Ms. Maloney's testimony.

The Court, sua sponte, determined that Ms. Maloney would be advocate and witness and disqualified her from serving in the former capacity. This was not done lightly. The Court recognizes that disqualification ultimately deprives a party of counsel of her choice and can (and has) stall and derail an action, see S & S Hotel Ventures, supra, 69 N.Y.2d at 443, 515 N.Y.S.2d at 738, . Here, a pending dispositive motion has been delayed (and will be delayed despite the decision of plaintiff's present motion) while the issue of plaintiff's counsel is resolved; plaintiff

now opposes a motion for summary judgment essentially without counsel (while this issue is pending). While plaintiff argues that she has a longstanding relationship with Ms. Maloney that would be prejudiced if Maloney were relieved of this case, that relationship is more with plaintiff's relative than with her. Plaintiff did not attest to any additional professional relationships with Ms. Maloney. Review of plaintiff's January 26, 2004, examination transcript reveals the peril of the advocate-witness. Frequently, Ms. Maloney felt compelled to invoke various privileges or the perceived scope of this Court's Order and declined to answer questions (e.g., Docket No. 56, at 3-7, 12, 47-49, 51-54).

## CONCLUSION

Plaintiff's motion for reconsideration (Docket No. 45) of the Order (Docket No. 44) disqualifying her counsel, Mary Maloney, is **denied**. In light of this, plaintiff has forty-five (45) days from entry of this Order to either have substituted counsel or appear pro se to proceed with this action. The Court will schedule a status conference thereafter to schedule defendants' motion (see Docket No. 51).

So Ordered.

                                                    s/HBS
                                       Hon. Hugh B. Scott
                                   United States Magistrate Judge

Dated: Buffalo, New York
        May 14, 2004